## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **STORMBORN TECHNOLOGIES LLC** <br><br> Plaintiff, <br><br> v. <br><br> **CALAMP CORP.** <br><br> Defendant. | Civil Action No.: <br><br> **TRIAL BY JURY DEMANDED** |

### COMPLAINT FOR INFRINGEMENT OF PATENT

Now comes, Plaintiff, Stormborn Technologies LLC ("Plaintiff" or "Stormborn"), by and through undersigned counsel, and respectfully alleges, states, and prays as follows:

### NATURE OF THE ACTION

1. This is an action for patent infringement under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") to prevent and enjoin Defendant CalAmp Corp. (hereinafter "Defendant" or "CalAmp"), from infringing and profiting, in an illegal and unauthorized manner, and without authorization and/or consent from Plaintiff from U.S. Patent No RE44,199 ("the '199 Patent" or the "Patent-in-Suit"), which is attached hereto as Exhibit A and incorporated herein by reference, and pursuant to 35 U.S.C. §271, and to recover damages, attorney's fees, and costs.

### THE PARTIES

2. Plaintiff is a Texas limited liability company with its principal place of business at 6205 Coit Road, Ste 300 – 1028, Plano, Texas 75024.

3. Upon information and belief, Defendant is a corporation organized under the laws of Delaware, having a principal place of business at 15635 Alton Parkway, Suite 250, Irvine,

California, 92618. Upon information and belief, Defendant may be served with process c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, 19808.

4. Plaintiff is further informed and believes, and on that basis alleges, that Defendant operates the website www.calamp.com, which is in the business of providing communication products and services, amongst other things. Defendant derives a portion of its revenue from sales and distribution via electronic transactions conducted on and using at least, but not limited to, its Internet website located at www.CalAmp.com, and its incorporated and/or related systems (collectively the "CalAmp Website"). Plaintiff is informed and believes, and on that basis alleges, that, at all times relevant hereto, Defendant has done and continues to do business in this judicial district, including, but not limited to, providing products/services to customers located in this judicial district by way of the CalAmp Website.

## JURISDICTION AND VENUE

5. This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§1 *et seq*.

6. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a).

7. This Court has personal jurisdiction over Defendant by virtue of its systematic and continuous contacts with this jurisdiction and its residence in this District, as well as because of the injury to Plaintiff, and the cause of action Plaintiff has risen in this District, as alleged herein.

8. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other

persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in this forum state and in this judicial District; and (iii) being incorporated in this District.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b) because Defendant resides in this District under the Supreme Court's opinion in *TC Heartland v. Kraft Foods Group Brands LLC,* 137 S. Ct. 1514 (2017) through its incorporation, and regular and established place of business in this District.

## FACTUAL ALLEGATIONS

10. On May 7, 2013, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '199 Patent, entitled "Variable throughput reduction communications system and method" after a full and fair examination. The '199 Patent is attached hereto as Exhibit A and incorporated herein as if fully rewritten.

11. Plaintiff is presently the owner of the '199 Patent, having received all right, title and interest in and to the '199 Patent from the previous assignee of record.  Plaintiff possesses all rights of recovery under the '199 Patent, including the exclusive right to recover for past infringement.

12. As identified in the '199 Patent, previous communications systems, namely in packet-communications spread-spectrum multi-cell systems, high-speed data would be implemented with a method of parallel channels, using parallel chip-sequence signals. Ex.A,1:37-41. By using multiple correlators or matched filters, multiple-orthogonal chip-sequence signals would be sent simultaneously thereby increasing the data rate while still enjoying the advantage of a high processing gain. Ex. A, 1:41-44. The multiple chip-sequence signals behaved as multiple users in a single location. Ex. A, 1:44-45. Multipath was ameliorated

by a RAKE receiver, and the interference to be overcome by the processing gain was that generated by other users, in the same or adjacent cells. Ex. A, 1:46-48.

13. In previous communication systems, when a remote station was within a cell or cell sector, the path differences from base stations located in the adjacent cells ensured that the interference was small enough so as not to cause the error rate of the wanted signal to deteriorate below a usable level. Ex. A, 1:50-54. When the remote station was near the edge of the cell, however, the interference would be substantial as the interference can result from two adjacent cells. Ex. A, 1:54-57.

14. One previous method that was used to overcome this problem in a conventional spread-spectrum system was to increase the processing gain in order to increase the immunity from interference. Ex. A, 1:58-61. To do this, in a fixed bandwidth system, the data rate was reduced, and the integration time of the correlator or the length of the matched filter was increased accordingly. Ex. A, 1:61-63. This method, however, changed the length of the correlator sequence, or changes the size of the matched filter; both of which impact the architecture of the receiver. Ex. A, 1:63-66. In addition, with increased integration times, the chip-tracking loop and phase-tracking loop would have to function flawlessly and the allowable frequency offset must have been reduced, requiring at least a frequency locked loop. Ex. A, 1:66-2:3.

15. The invention claimed in the '199 Patent addresses these needs and inefficiencies by providing an improved a communication system.

16. Claim 11 of the '199 Patent states:

> "11. A receiver for recovering wireless data conveyed in data symbols by a plurality of different subchannel signals transmitted over a wireless channel, comprising:

    demodulator circuitry for detecting the transmitted signals in a plurality of demodulated channels;

    decoder circuitry for FEC decoding and de-interleaving the plurality of demodulated channels, providing a multiplicity of decoded channels, each having an error rate;

    command processor circuitry responsive to the error rate of the decoded channels for generating a data-rate control signal to produce a desired data rate to be sent by the data symbol transmitter of the signals, the data rate control signal controlling operation of circuitry at the transmitter to produce the desired data rate to be sent by the data symbol transmitter of the signals;

    transmitting circuitry for conveying the error rate dependent rate control signal back to the data symbol transmitter; and

    multiplexer circuitry for combining the multiplicity of decoded channels into a signal stream of received data." See Exhibit A.

17.  Claim 12 of the '199 Patent states:

    "12. The receiver of claim 11 wherein the decoder circuitry includes circuitry to decode FEC codes of different rates." See Exhibit A.

18.  Claim 13 of the '199 Patent states:

    "13. A method for recovering wireless data conveyed in data symbols by a plurality of different subchannel signals transmitted over a wireless channel, comprising the steps of:

    detecting the transmitted signals in a plurality of demodulated channels;

    FEC decoding and de-interleaving the plurality of demodulated channels, providing a multiplicity of decoded channels, each having an error rate;

    using command processor circuitry responsive to the error rate of the decoded channels to generate a data-rate control signal to produce a desired data rate to be sent by the data symbol transmitter of the signals,

    transmitting the error rate dependent data-rate control signal back to the data symbol transmitter; and

    multiplexing the multiplicity of decoded channels into a single stream of received data." See Exhibit A.

19.  Claim 14 of the '199 Patent states:

    "14. The method of claim 13 wherein the decoding step includes decoding FEC codes of different rates." See Exhibit A.

20. Claims 11-14 of the '199 Patent recite a non-abstract method for a communication system.

21. Claims 11-14 of the '199 Patent provide the practical application of a method for a communication system.

22. Claims 11-14 of the '199 Patent provide an inventive step for a communication to address the deficiencies and needs identified in the Background section of the '199 Patent. See Ex. A.

23. Defendant commercializes, inter alia, methods that perform all the steps recited in at least one claim of the '199 Patent. More particularly, Defendant commercializes, inter alia, methods that perform all the steps recited in Claim 11 of the '199 Patent. Specifically, Defendant makes, uses, sells, offers for sale, or imports a method that encompasses that which is covered by Claim 11 of the '199 Patent.

## **DEFENDANT'S PRODUCT(S)**

24. Defendant offers solutions, such as the "CalAmp TTU-1230" device (the "Accused Product"), that is a receiver for recovering wireless data conveyed in data symbols by a plurality of different subchannel signals transmitted over a wireless channel. A non-limiting and exemplary claim chart comparing the Accused Product of Claims 11-14 of the '199 Patent is attached hereto as Exhibit B and is incorporated herein as if fully rewritten.

25. As recited in Claim 11, the Accused Product includes demodulator circuitry for detecting the transmitted signals in a plurality of demodulated channels. See Exhibit B.

26. As recited in one part of Claim 11, the Accused Product includes decoder circuitry for FEC decoding and de-interleaving the plurality of demodulated channels, providing a multiplicity of decoded channels, each having an error rate. See Exhibit B.

27.     As recited in another part of Claim 11, the Accused Product includes command processor circuitry responsive to the error rate of the decoded channels for generating a data-rate control signal to produce a desired data rate to be sent by the data symbol transmitter of the signals, the data rate control signal controlling operation of circuitry at the transmitter to produce the desired data rate to be sent by the data symbol transmitter of the signals. See Exhibit B.

28.     As recited in one part of Claim 11, the Accused Product includes transmitting circuitry for conveying the error rate dependent rate control signal back to the data symbol transmitter. See Exhibit B.

29.     As recited in another part of Claim 11, the Accused Product includes multiplexer circuitry for combining the multiplicity of decoded channels into a signal stream of received data. See Exhibit B.

30.     As recited in one part of Claim 12, the Accused Product, wherein the decoder circuitry includes circuitry to decode FEC codes of different rates. See Exhibit B.

31.     As recited in one step of Claim 13, a system, at least in internal testing and usage, utilized by the Accused Product practices a method for recovering wireless data conveyed in data symbols by a plurality of different subchannel signals transmitted over a wireless channel. See Exhibit B.

32.     As recited in another step of Claim 13, the system, at least in internal testing and usage, utilized by the Accused Product practices detecting the transmitted signals in a plurality of demodulated channels. See Exhibit B.

33.     As recited in another step of Claim 13, the system, at least in internal testing and usage, utilized by the Accused Product practices FEC decoding and de-interleaving the plurality

of demodulated channels, providing a multiplicity of decoded channels, each having an error rate. See Exhibit B.

34. As recited in another step of Claim 13, the system, at least in internal testing and usage, utilized by the Accused Product practices using command processor circuitry responsive to the error rate of the decoded channels to generate a data-rate control signal to produce a desired data rate to be sent by the data symbol transmitter of the signals. See Exhibit B.

35. As recited in another step of Claim 13, the system, at least in internal testing and usage, utilized by the Accused Product practices transmitting the error rate dependent data-rate control signal back to the data symbol transmitter. See Exhibit B.

36. As recited in another step of Claim 13, the system, at least in internal testing and usage, utilized by the Accused Product practices multiplexing the multiplicity of decoded channels into a single stream of received data. See Exhibit B.

37. As recited in another step of Claim 14, the system, at least in internal testing and usage, utilized by the Accused Product practices decoding FEC codes of different rates. See Exhibit B.

38. The elements described in the preceding paragraphs are covered by at least Claim 11 of the '199 Patent. Thus, Defendant's use of the Accused Product is enabled by the method described in the '199 Patent.

## INFRINGEMENT OF THE PATENT-IN-SUIT

39. Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs

40. In violation of 35 U.S.C. § 271, Defendant is now, and has been directly infringing the '199 Patent.

41. Defendant has had knowledge of infringement of the '199 Patent at least as of the service of the present Complaint.

42. Defendant has directly infringed and continues to directly infringe at least one claim of the '199 Patent by using, at least through internal testing or otherwise, the Accused Product without authority in the United States, and will continue to do so unless enjoined by this Court.  As a direct and proximate result of Defendant's direct infringement of the '199 Patent, Plaintiff has been and continues to be damaged.

43. Defendant has induced others to infringe the '199 Patent by encouraging infringement, knowing that the acts Defendant induced constituted patent infringement, and its encouraging acts actually resulted in direct patent infringement.

44. By engaging in the conduct described herein, Defendant has injured Plaintiff and is thus liable for infringement of the '199 Patent, pursuant to 35 U.S.C. § 271.

45. Defendant has committed these acts of infringement without license or authorization.

46. As a result of Defendant's infringement of the '199 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

47. Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court.  As such, Plaintiff is entitled to compensation for any continuing and/or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement.

48. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction

purposes by the claim charts that it provides with this Complaint. The claim chart depicted in Exhibit B is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

## DEMAND FOR JURY TRIAL

49. Plaintiff demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a. That Defendant be adjudged to have directly infringed the '199 Patent either literally or under the doctrine of equivalents;

b. An accounting of all infringing sales and damages including, but not limited to, those sales and damages not presented at trial;

c. That Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be permanently restrained and enjoined from directly infringing the '199 Patent;

d. An award of damages pursuant to 35 U.S.C. §284 sufficient to compensate Plaintiff for the Defendant's past infringement and any continuing or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

e. An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. §284;

f. That Defendant be directed to pay enhanced damages, including Plaintiff's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. §285; and

g. That Plaintiff be granted such other and further relief as this Court may deem just and proper.

Dated: October 28, 2019                    Respectfully submitted,

                                           CHONG LAW FIRM

                                           /s/ *Jimmy Chong*
                                           Jimmy Chong
                                           2961 Centerville Road, Suite 350
                                           Wilmington, DE 19808
                                           Telephone: (302) 999-9480
                                           Facsimile: (877) 796-4627
                                           Email: chong@chonglawfirm.com


                                           Together with:

                                           SAND, SEBOLT & WERNOW CO., LPA

                                           Howard L. Wernow
                                           (*pro hac vice forthcoming*)

                                           Aegis Tower - Suite 1100
                                           4940 Munson Street, N. W.
                                           Canton, Ohio 44718
                                           Phone: 330-244-1174
                                           Fax: 330-244-1173
                                           Howard.Wernow@sswip.com

                                           ATTORNEYS FOR PLAINTIFF